UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LINDA D. BRABOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:18 CV 629 ACL |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Linda D. Braboy brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Braboy's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## I. Procedural History

Braboy filed her application for benefits on October 7, 2014, claiming that she became unable to work on January 1, 2010. (Tr. 788-801.) In her Disability Report, Braboy alleged disability due to the following conditions: spondylosis, scoliosis, neck pain, sciatic nerve pain, inflammation of the spine, ankle weakness, numbness in the hands and feet, heart valve problems, vasovagal syncopy, hip problems, rashes on the arms and legs, urination and bowel problems, obesity, and heel and ankle pain. (Tr. 827.) Braboy was 38 years of age at her alleged onset of disability. *Id.* Her applications were denied initially. (Tr.707.) Braboy's claims were denied by an ALJ on June 14, 2017, after a hearing. (Tr. 615-34.) On February 22, 2018, the Appeals Council denied Braboy's claim for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Braboy argues that the ALJ "failed to fully and fairly develop the record." (Doc. 18 at 3.) Braboy also contends that the "decision of the ALJ is contrary to the weight of the evidence currently of record." *Id.* at 6.

## II. The ALJ's Determination

The ALJ first found that Braboy has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. (Tr. 621.) In addition, the ALJ concluded that Braboy has the following severe impairments: postural orthostatic tachycardia syndrome ("POTS") [2]/

---

[2] POTS is a condition that affects circulation. It is usually triggered when a person stands up after lying down, and may be relieved by sitting or lying back down. *See* https://www.webmd.com/heart-disease/atrial-fibrillation/postural-orthostatic-tachycardia (last visited July 29, 2019).

vasovagal syncope; degenerative disc disease and degenerative joint disease; obesity; hallux valgus of bilateral feet; pes planus; osteoarthritis of the feet, bilateral knees, and elbows; mild right sacroiliac joint arthritis; and obstructive sleep apnea. *Id.* The ALJ found that Braboy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 622.)

As to Braboy's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations. The claimant can occasionally climb ramps or stairs, but no ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She can occasionally reach overhead and can frequently reach in all other directions. She should never be exposed to unprotected heights, moving mechanical parts, vibration, or operating a motor vehicle as a job duty.

(Tr. 622-23.)

The ALJ found that Braboy was unable to perform any past work, but was capable of performing other jobs existing in significant numbers in the national economy, such as patcher, surveillance system monitor, and polisher. (Tr. 626-28.) The ALJ therefore concluded that Braboy was not under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of the decision. (Tr. 628.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on October 7, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

> Based on the application for supplemental security income protectively filed on October 7, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 629.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and

>5. Any corroboration by third parties of the plaintiff's impairments.
>
>6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

## III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of

impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next,

the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Braboy argues that the ALJ failed to fully and fairly develop the record regarding Braboy's physical RFC. Braboy further contends that the decision of the ALJ is contrary to the weight of the evidence currently of record.

The ALJ found that Braboy had the physical[3] RFC to perform sedentary work with the following additional limitations: occasionally climb ramps or stairs, but no ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; occasionally reach overhead; frequently reach in all other directions; can never be exposed to unprotected heights, moving mechanical parts, or vibration; and can never operate a motor vehicle as a job duty. (Tr. 622-23.)

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based

---

[3]Braboy does not challenge the ALJ's findings regarding her mental impairments.

on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record).

Braboy correctly notes that there is no opinion evidence directly addressing her physical limitations. No such opinion, however, is required. Although an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of h[er] limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to her RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (emphasis in original).

In assessing Braboy's RFC, the ALJ summarized the extensive medical evidence in this case. The ALJ noted that, although Braboy alleges disability since 2010, the record does not reflect treatment until August 8, 2012, at which time she reported episodes of passing out while shopping. (Tr. 624, 914.) An echocardiogram Braboy underwent was unremarkable (Tr. 972);

and a Holter monitor report revealed incidents of tachycardia, but was overall assessed as normal (Tr. 935). Braboy was diagnosed with a syncopal episode, probably vasovagal, and was started on medication. (Tr. 935.) Braboy returned to the emergency room on August 27, 2012, with reports of rapid heartbeat while running errands. (Tr. 974.) It was noted that Braboy had not started her medication prescribed after her last emergency room visit. *Id.* Upon examination, Braboy's heart rate and rhythm were normal. (Tr. 976.) She was diagnosed with palpitations. *Id.* Braboy saw a physician at the St. Louis University Hospital's Arrhythmia Clinic on January 9, 2014, at which time she reported episodes of syncope monthly when she is standing for extended periods of time or when she goes from lying down to standing or sitting to standing. (Tr. 1272.) In March 2014, Braboy reported another syncope event. (Tr. 1004.) She had not followed up with a cardiologist due to financial reasons. *Id.* Braboy was diagnosed with pre-syncopal events, likely POTS. *Id.*

Braboy's argument focuses on her musculoskeletal impairments. In this regard, the ALJ noted the following objective findings from imaging: bilateral pars defects at L5-S1 with spondylolisthesis, foraminal compromise at L5-S1, and a previous T11 kyphoplasty[4] (Tr. 999); minimal cervical disc bulges without central canal stenosis or neural foraminal stenosis (Tr. 1169); grade 1 anterolisthesis of L5 on S1 with neural foraminal stenosis but no central canal stenosis (Tr. 1171); and moderate right and minimal left knee osteoarthritis (Tr. 1482). (Tr. 624-25.) The ALJ noted that Braboy did not report musculoskeletal complaints until a September 2013 fall. (Tr. 624.) Braboy presented to the emergency room on September 5, 2013, complaining of left knee, back, and right shoulder pain after stepping in a sinkhole with

---

[4]Injection of bone cement into a compressed vertebra. *Stedman's Medical Dictionary,* 1036 (28th Ed. 2006).

her left leg. (Tr. 985.) Braboy was diagnosed with strain of back muscle, sprain of knee, and shoulder pain. (Tr. 989.) She was prescribed a muscle relaxer and pain medication and was advised to follow-up with her regular provider. *Id.* Braboy followed-up at Grace Hill Health Center for the remainder of 2013. (Tr. 1194-1267.) On September 12, 2013, it was noted that Braboy was placed on pain medication and muscle relaxants by the emergency room doctor, but never got her prescriptions filled. (Tr. 1194.) On examination, findings of lumbar spine muscle spasm and mild pain with motion were noted. (Tr. 1195.) On October 3, 2013, Braboy was noted to be "poorly compliant in taking her medications" for her back pain. (Tr. 1198.) Muscle spasms and moderate pain with motion of the lumbar spine were again noted. (Tr. 1199.) On November 4, 2014, Braboy reported lower back and thoracic spine pain, and indicated she had good and bad days, but more bad days lately. (Tr. 1204.) She had undergone thoracic surgery after a motor vehicle accident in 2002, and was better until her September 2013 injury. *Id.* Braboy was taking Oxycodone,[5] but did not like the side effects, so was only taking Flexeril[6] at night. *Id.* She was referred to Dr. Xiaobin Yi for pain management. (Tr. 1205.) Dr. Yi administered injections, which Braboy reported helped her pain. (Tr. 1234.) On July 23, 2014, Braboy reported that she was "out all day searching for work." (Tr. 1249.) She received nutritional therapy at Grace Hill to try to lose weight. (Tr. 1249-64.) Exercise, such as water aerobics, was recommended. *Id.* On September 2, 2014, Braboy saw orthopedic surgeon Ronald A. Lehman, Jr., M.D., with complaints of "intermittent leg and back symptoms."

---

[5]Hydrocodone contains a combination of an opioid (narcotic) pain reliever—hydrocodone—and a non-opioid pain reliever—acetaminophen. *See* WebMD, http://www.webmd.com/drugs (last visited July 29, 2019).

[6]Flexeril is indicated for the treatment of muscle spasms. *See* WebMD, http://www.webmd.com/drugs (last visited July 29, 2019).

(Tr. 1122.) Upon physical examination, Braboy had normal strength of the bilateral lower extremities, and normal sensation to the bilateral extremities. *Id.* Dr. Lehman diagnosed Braboy with low back pain and L5-S1 spinal listhesis. *Id.* He stated that Braboy's symptoms were "less limiting as a result we do not recommend that she have surgery at this point." *Id.* Dr. Lehman instead advised Braboy to continue her nutritional classes and try to lose weight. *Id.* Braboy received epidural steroid injections in 2015 and 2016 for her spinal pain, which she indicated were helpful for sciatica. (Tr. 1449-1455, 1457-82.) She also participated in physical therapy in May and June of 2016. (Tr. 1556-89.) On June 29, 2016, it was noted that she was able to manage her activities of daily living but had increased pain and fatigue, and that she was walking every day or every other day for 8 to 14 blocks with her rolling walker. (Tr. 1558.) In a December 2016 treatment note, a physician noted that Braboy used a rolling walker "because of her POTS syndrome." (Tr. 1469.) She complained of "moderate back pain that is present all day and is worse with activities." *Id.* On January 24, 2017, Braboy presented to the emergency room via ambulance with complaints of severe, sharp lower back pain that radiated to the right leg. (Tr. 1597.) Upon examination, Braboy was in no acute distress, had "very mild" focal tenderness to palpation over L5, no motor or sensory deficit, normal range of motion, and her gait was "a bit slow but steady without assistance." (Tr. 1599.) She was discharged with a diagnosis of lower back pain; Oxycodone was prescribed for pain. (Tr. 1602.)

The ALJ summarized that Braboy received conservative treatment for her joint and spinal impairments; no surgical intervention has been recommended; and Braboy reported efficacy of her injections and pain medication. (Tr. 625.) He further noted that Braboy has reported that her episodes of dizziness and pre-syncope are resolved by sitting and are prevented by changing

positions slowly. (Tr. 625, 1272, 1277.) These findings are supported by the medical evidence of record discussed above.

The ALJ indicated that, in addition to the objective medical findings and treatment history, he considered Braboy's daily activities. (Tr. 625.) He found that Braboy's daily activities are inconsistent with debilitating conditions and allegations that she has been unable to work. *Id.* For example, the ALJ noted that, despite her impairments, Braboy is independent in self-care, capable of performing daily tasks and household chores, lives independently and receives no assistance, is able to grocery shop, uses public transportation, and attends some social events. (Tr. 625-26, 652-55.) The ALJ also noted that, although Braboy alleges disability since 2010, she continued to seek employment and volunteer a few years after this date, and had few symptoms of musculoskeletal pain until her September 2013 fall. (Tr. 626.) Finally, the ALJ pointed out that "no treating provider throughout the claimant's extensive treatment record has opined her to be disabled, nor have [] provided any specific functional limitation…" (Tr. 626.)

The ALJ concluded as follows:

> In sum, the claimant's spinal impairments and osteoarthritis support a reduction to a sedentary exertional level with reduced postural demands and no exposure to vibration. The claimant's cervical spinal impairment limits her ability to reach, but she has no limitations in handling or fingering. Due to the claimant's impairments and in particular her history of pre-syncope and syncope associated with POTs, she should not be exposed to heights, hazards, or operating a motor vehicle. The claimant is not precluded from sedentary work, as her POTS symptoms do not appear to occur while seated. The record does not support limitations further than those set forth in the residual functional capacity.

(Tr. 626.)

The Court finds that substantial evidence on the record as a whole supports the ALJ's physical RFC determination. Although imaging of the spine supports the presence of

musculoskeletal impairments, physical examinations have revealed few abnormalities. For example, examinations shortly after Braboy's September 2013 fall noted some muscle spasms and moderate pain with motion of the lumbar spine (Tr. 1195, 1199), but by September 2014, examinations revealed normal strength and sensation, normal range of motion, and a slow but normal gait (Tr. 1122, 1599). Braboy was treated conservatively with pain medication, physical therapy, and nutritional therapy. Orthopedic surgeon Dr. Lehman did not recommend surgery because Braboy's symptoms were not sufficiently limiting, and instead recommended weight loss. (Tr. 1122.) The ALJ also accurately found that Braboy's significant daily activities and continued search for employment well after her alleged onset of disability were inconsistent with her allegations of disabling pain and limitations. The evidence of record is consistent with the performance of a limited range of sedentary work.

Where, as here, the RFC is supported by substantial evidence on the record as a whole, the ALJ was not required to obtain a consultative examination or a doctor's opinion to determine plaintiff's work-related limitations. *Hensley*, 829 F.3d at 932 (ALJ not required to seek additional information from treating physicians or order consultative examination where medical record is adequately developed); *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ required to supplement record only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled).

The ALJ had sufficient available evidence to determine the merits of Braboy's disability claim. That evidence included findings on examination; conservative treatment that did not even begin until over two years after Braboy's alleged onset of disability; Dr. Lehman's opinion that surgery was not required and advice to exercise; and Braboy's own testimony about her

limitations and daily activities that was consistent with the performance of a range of sedentary work.  Thus, the ALJ did not err by failing to further develop the record.

Braboy also contends that the ALJ erred in failing to consider medical evidence from Affinia Healthcare ("Affinia") that Braboy submitted after the hearing.

Braboy submitted the records at issue on June 12, 2017, after the June 6, 2017 deadline for the submission of evidence.  (Tr. 8.)  At Braboy's counsel's request, the ALJ had left the record open for "a couple of weeks" after the April 7, 2017 hearing.  (Tr. 672.)  In a letter dated April 27, 2017, the ALJ notified Braboy that if evidence was not submitted within ten days, he would make his decision based on the available evidence.  (Tr. 900.)  On May 8, 2017, Braboy's counsel requested additional time to submit new evidence.  (Tr. 901.)  On May 10, 2017, the ALJ granted an extension of time, until May 23, 2017, to submit evidence.  (Tr. 902.)  The ALJ granted Braboy's counsel's second motion for extension of time, and granted Braboy until June 6, 2017 to submit any additional evidence.  (Tr. 904.)  On June 7, 2017, after the deadline had expired, Braboy's counsel requested an indefinite extension to submit the Affinia records.  (Tr. 905.)  The ALJ issued his decision on June 14, 2017, without referencing the Affinia records.

The Appeals Council addressed the Affinia evidence as follows:

> You submitted evidence from Affinia Healthcare dated August 17, 2010 through May 10, 2017 (610 pages).  We find that you did not have good cause for why you missed informing us about or submitting this evidence earlier.  We did not consider and exhibit this evidence.

(Tr. 2.)

Braboy contends that the ALJ erred in ignoring the new evidence from Affinia because consideration of this evidence should have changed the outcome of the case.  The undersigned disagrees.  First, from a procedural perspective, the ALJ did not err in failing to address the

untimely submitted evidence. The ALJ gave Braboy multiple extensions of time following the hearing in which to submit additional evidence. Braboy's motion for extension was not filed until after the expiration of the deadline to submit evidence and an indefinite extension was requested. Braboy had been cautioned that a decision would be made if evidence was not timely submitted.

Second, to the extent Braboy argues the new evidence would have changed the outcome of the proceedings, the Court finds this argument without merit. The Appeals Council, under the *Social Security Administration Final Rule*, will review a case if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 FR 90987-01 (December 16, 2016). When "the Appeals Council considers new evidence but denies review, [the reviewing Court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

Braboy points to only two pieces of evidence from the Affinia records. First, she cites x-rays of her left shoulder she underwent in May 2017. (Tr. 19.) The x-rays revealed "considerable degenerative osteoarthritic change especially at the humeral ulnar joint," but no fracture or joint effusion. (Tr. 19.) This evidence is not inconsistent with the ALJ's findings. The ALJ considered the pain and limitations from Braboy's musculoskeletal impairments, including her degenerative joint disease, in limiting her to sedentary work with additional restrictions of only occasional overhead reaching and frequent reaching in all other directions.

(Tr. 622-23.) The left shoulder x-rays showing evidence of degeneration would not change the ALJ's decision.

Braboy next points to a "Disability-Based Reduced Fare Application-Professional Verification" completed on June 12, 2015 by treating primary care physician Hari Nallapaneni, M.D. (Tr. 589-93.) Dr. Nallapaneni checked a box on this form indicating that Braboy had "any condition requiring the use of crutches, wheelchair, walker, leg or foot braces, or other such devices in order to be mobile." (Tr. 591.) Braboy argues that this evidence constitutes an opinion by an acceptable medical source that Braboy required the use of an assistive device to remain mobile. This "opinion" is relevant, according to Braboy, because the ALJ noted in his decision that a physician had not prescribed the rolled walker that Braboy uses. (Tr. 626.)

Braboy's argument lacks merit. Dr. Nallapaneni merely checked a box on a form for the purpose of allowing Braboy to receive reduced fare on public transportation. Even if this were considered credible medical evidence regarding Braboy's limitations, it would not affect the outcome of the case. The ALJ asked the vocational expert whether the jobs he identified that could be performed with Braboy's RFC would still be available if the hypothetical individual required a walker for ambulation. (Tr. 669.) The vocational expert testified that, because the positions identified were sedentary, "there should be no problem with using a walker." (Tr. 669-70.) Thus, the ALJ's determination remains supported by substantial evidence on the record as a whole when considering the Affinia records.

An ALJ's decision is not to be disturbed "'so long as the...decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'" *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528

F.3d 1113, 1115 (8th Cir. 2008)). Although Braboy articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above. *See Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (concluding that "[w]hile it was not surprising that in an administrative record which exceeds 1,500 pages, [claimant] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination).

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of August, 2019.